This cause was brought before us by writ of error from Adams supers* *120 or court, and argued with great zeal and ability on both sides. It is not without its difficulties, and the cause resting with only two of the Judges, an apprehension that an opinion may not be entirely satisfactory, increases the diffidence with which it is given.
The errors assigned are: — 1st. Because the court after rejecting a patent offered by the plaintiffs below, and signing a bill of exceptions, tendered by their counsel, admitted the same, as stated more particularly in the bill of exceptions.
2nd. Because the court below admitted the Spanish warrant and order of survey in said bill mentioned, and instructed the jury, that the same vested a complete legal title in the plaintiffs below.
3rd. Because the court refused to permit the defendants below to show a non compliance of the plaintiffs lessors, with the terms imposed by the Spanish government as stated in the bill of exceptions.
4th. Because the court refused to permit the defendants below, to read the Spanish grant in the bill of exceptions mentioned, for the purposes therein expressed.
5th. Because the presiding judge refused to give to the jury the instructions required by the counsel of defendants below, as detailed in the bill of exceptions.
These instructions were: — 1st. That the plaintiffs cannot avail themselves of the patent in deriving their title — 1st. because it is subsequent to the demise laid in the declaration.
2nd. Because it appears in evidence that James Cole was dead long anterior to the issuing of the patent.
2nd. That as the Spanish warrant or order of survey did not appear to have emanated from the regular Governor, but from Grandpre, the deputy, his authority for making the warrant should have appeared.
3rd. That the title to the plaintiffs, under the said warrant, or order of survey, could not accrue, until a certificate should be obtained from the board of commissioners.
4th. That the certificate offered by defendant from the board of commissioners, is conclusive of title in defendant.
The heirs, in their declaration, of April term, 1817, lay the demise to have been by James Cole, the ancestor, since dead, on the first day of *121 January 1815, and the patent to James Cole and his heirs hears date on the 29th of December 1815.
The property in contestation, is lot No. 4, in square No. 12, as designa* ted in a map of the city of Natchez. ,
The evidences of plaintiffs title are---
1st. The petition of their ancestor James Cole, for the said premises to the Spanish governor, bearing date 5th of June 1795.
2nd. The certificate of Wm. Dunbar, the deputy surveyor general, 'that said lot was vacant,- bearing same date.
3rd. A possessory order of thedeputy, governor, or Grandpre, in favor of the petitioner, for the premises in question, bearing date 6th June 1795.
4th. Certificate of survey of same, by William Dunbar, the deputy surveyor general, of date 3rd October 1795.
5th. The aforesaid patent, from the United States of America, bearing date 29th December 1815 — Viewing the title alone, and it presents the principal features of a regular, complete legal title, but when confronted with the defendant’s title, and affected by the evidence in the Case, it is said to be imperfect, and cannot prevail against that of the defendants. It is also said, that the confirmation, being by the deputy governor, and not by Guyosa, the governor in chief, the authority of the subordinate ought to appear. It may be well to consider this objection first. The character of these deputy, or Lieutenant governors, is well known to be such, that they succeed to the discharge of the executive functions, in all cases of the absence of the governor in chief, and his mandate having been complied with in the present case, on the part of the deputy surveyor general, in the absence of all proof of the want of competent authority, affords a satisfactory presumption, that at the issuing the possessory order in favor of James Cole, Grandpre was legitimately performing the executive functions in this behalf. This fact ascertained, the possessory order in favor of James Cole to the premises in question, dated 6th day of June 1795, and executed by the surveyor on the third of October of the same year, by which the said Cole was put into possession, vested in him such a right as could only be defeated by his own act of alienation, voluntary abandonment. or by such an entire failure to perform the conditions, or by some *122 act against the government, which would justify in them a confiscation-. In regard to the first, there is no pretence set up, neither is it pretended 'that there was a voluntary abandonment, or any rebellious or treasonable practices on the part of Cole, to justify the Spanish government in the revocation of its grant or order of possession, and confiscation of the property. But it is alleged that there was such a failure of the performance of the conditions, as worked a forfeiture of his right, under the established regulations of the Spanish government, and which, by a destruction of Cole’s title thereto, reduced this lot again to the character of the unappropriated domain. This question will be more fully examined, when we come to consider the third error assigned. For the present, we shall content ourselves with the remark, that there is no express declaration of the Spanish government in attestation of this fact, unless the information of the surveyor to the governor, which we perceive to have been the usual and formal procedure in regard to all unappropriated lands, and not to imply a judicial investigation and decision on the part of either the survey or or governor, be considered in this light, and it is presuming too much against (he justice of any government, to attribute to it no more solemnity in the abduction of a vested right in the land of one of its subjects, than it employs in the ordinary transfer of its own unappropriated domain, and even if the Spanish government had expressly stated the revocation of its grant, for the non performance of the conditions, the justice of the act of confiscation would still be well questioned by a jury, who would not sanction it, if the effect of capricious tyranny', but only in case it had proceeded on the salutary and lawful principles recognized by all civilized nations in relation to the rights of the citizen and subject. By reference to the petition of Farine Ros, under whom defendants below claim title, to the order of Survey, and the certificate of the surveyor of its accomplishment, it will be found, that they, all bear date on the first of August 1796, and that the principal condition proposed and exacted, was the building a dwelling house on the premises, and the confirmatory declaration of the governor, in which he admits the performance of the stipulated conditions, bears date on the 8th of the same month and year. The presumption would be rash and unreasonable, which supposes, what is here officially admitted, and a contrary presumption, though it should not be raised to impair the *123 character of this grant, yet may be allowed to show the little importance attached to these conditions, by the highest authorities themselves. The», doctrine that in ejectment, the plaintiff must prevail by the strength of his own title, and not on the weakness of the defendant’s is too well established to be now contested. And the principle, so fully elucidated by counsel in argument, and not resisted at the bar, that the plaintiff must proceed on a legal, and not on an equitable title, in order to his success, will be allowed by this court — Vide, Adams on ejectments 32 &c. Runington, do. 14, with other authorities cited at the hearing.
This court, having recently, in the case of Hackler’s heirs vs. Cabel, had occasion fully to examine the character of the titles granted to donees by the act of 3 J of March 1803, and that of 27th March 1804 supplementary thereto, and being of opinion that the same reasoning and principles will apply to such as hold under a Spanish order of survey, will not again go over the grounds occupied by their opinion in that case, but adopting i's deductions, refer to them as the basis of their present conclusions, and shall consider the right of the ancestor, and the present plaintiffs below, to be such legal right, as is sufficient, so far as may depend on its legal character,' as contradistinguished from its equitable one, to warrant a recovery in ejectment.
Having given this sanction to the opinion of the court below, which induced it to reconsider its decision, excluding the patent offered by plaintiffs below in evidence of title, after it had signed and sealed a bill of exceptions taken to its said opinion, set out by the first error assigned, we will consider, whether there.is any thing in this particular attitude of the cause, which forbids a change of opinion in the mind of the court below, after its first-expression is in paper. And we can see no good reason fox-denying this privilege to the judges. At the nisi prius sessions, where hasty and imperfect opinions are necessarily often formed, in the absence of books, and an opportunity for due reflection. Why should the judge be held to a hasty erroneous opinion, and thereby be compelled to conduct the cause, contrary to his clear conviction of right, because he had signed abillofexceptionstoan opinion he has since abandoned, when by such abandonment, he can give the party aggrieved by the error, the entire bettr efit he could desire from a decision of the supreme court, without subjecting him to the inconveniences and delays of a writ of error.
*124 Many of the proceedings of the court, are subject to its revision and' correction during the term, and the furtherance of justice and th'e diminution of expence to the parties, recommend such a discretion as was exercised by the judge, as reasonable and salutary. We are of opinion that a sufficient answer has already been given to the second error assigned..
In regard to the third error assigned, the authorities cited at the bar by Mr. Metcalfe, Coke Littleton, 213;. 1 Bac. abrig’t. 635, 640, and many other passages in these authorities, prove satisfactorily to us, that the question in relation to the performance of subsequent'conditions to a deed, can only be raised by the grantor or bis heirs, and this principle we think applies to the present case, of the possessory order of survey of the Spanish government in favor of James Cole, having conditions subsequent to be performed by him, the performance of which, are either admitted or dispensed with by the American government which succeeded to the sovereignty, evidenced by the issuing a patent, for the premises in question, to the said Cole &. heirs. Had the United States, refused to confirm this order of survey, and the contest was now between them and Cole, it would perhaps in such case, have been proper to let in parol evidence, to show a non performance of conditions. It is attempted to evade the effect of this principle, by considering the expressions, that the land was vacant, some where made in the subsequent conveyance to Ros, as conclusive evidence of an official act of revocation and confiscation of Cole’s right, but this agreement has already been answered,, and had little weight with the government of the U. States, which preferred the claims of Cole, resting on his possessory order of survey, to the rights of those who claimed under the grant to Ros, even after this had received the sanction of their own board of commissioners. Whatsoever might be our opinion upon this subject, where a declaration of the Spanish government, which had the solemnity of a direct, express, and judicial decision against the rights of Cole, for a non performance of the stipulated conditions annexed to his grant, was under discussion, or even where there had been no confirmation of Cole’s rights by the former or present sovereignty, in the present case, we think the parol evidence was correctly excluded by the court, and that the plaintiffs in error cannot prevail on this ground. It may make this opinion more satisfactory to remark, that Cole was not put into possession until the *125 third of October, 1795, and that the proceedings on the part of Ros, were-instituted on the first of the ensuing August, a term less than twelve months, which though a more reasonable time than the period of seven days, in which the house of Ros, as if by magic, is supposed to have arisen, is yet under the known courtesy and usages of the Spanish government, a period top short to work a destruction of Cole’s rights. No limitations are made in the order of possession, but such as result from the general regulations of the Spanish government, in regard to limitations of this sort, and where we view the magnitude of the conditions, in relation to the value of the property at the time of the grant, and compare this case with other grants of that government, and the indulgence given under them as.to time, we will be satisfied, that no forfeiture could have resulted, admitting all that parol evidence could have established on this subject. It may also be considered, that all the Spanish .government has done, has been at the instance of Ros, to whose solicitations it has yielded, but at his own risque, and on his own suggestions, procured from the surveyor.
The arguments which induce us to overrule the third error assigned, produce the same convictions, in regard to the fourth.
We will now examine the grounds of the fifth error assigned, which relates to the refusal on the part of the court to give certain specific chai ges to the jury. The court was required in the first place to charge the jury, that-the plaintiffs could not avail themselves of the patent in deriving their title.
1st. Because it is subsequent to the demise laid in the declaration.
2d. Because it appears in evidence, that James Cole was dead long anterior to the emanation of the patent. •
The first of these objections, would have been very formidable, had the plaintiffs title rested wholly on this patent, but as we are inclined to think their title good, for all the purposes of bringing and sustaining this action as it existed in the order of survey, and the confirmatory act of Congress, in the ancestors, we consider this patent as a formal part of the conveyance, and shall have relation back to the substantial investiture of title aforesaid, and in this acceptation, the patent was well admitted. In 5th Cruise on real property 551, Lord Mansfield is reported to have said“ *126 “there is ¡10 rule better founded in law, reason and convenience, than thi»,-.-that all the several parts and ceremonies necessary to complete a conveyance, shall be taken together as one act, and operate from the substantial part by relation. Livery relates to the feofment; enrolment to the bargain and sale, and recovery to the deed which leads the use; so admittance shall relate to the surrender especially when it is a sale for a valuable consideration.” The same doctrine is recognized in the case of Holdfoot vs. Clopham 1 Term, reports 600, by the court of Kings Bench, in which it was hold, that the title to copy hold lands relates back to the time of admittance to the surrenderor, as against all persons but the lord; so that the surrenderee may recover in ejectment, against the surrenderor,. 011 a demise laid between the times of surrender and admittance. Ash-librst who presided in that case sa)s “the demise was laid in April 1786, the plaintiff proved his admittance on the 26th of July 1186 on a surrender by defendant by way of mortgage, made before April term 1786, so that the demise laid, vyas before the admittance, Mr. Justice Buller on the trial being inclined to think that the title oí a copy holder was not complete, (so as to maintain an ejectment,) before admittance, the plaintiffs was non suited,. and the motion is, to set aside the non suit. As against all persons, but the lord, the title of the surrenderee, after admittance, is perfect as from the time of the surrender, and shall relate back to it. if there had been no admittance here before the trial, it might have raised a greater doubt. But here, there was an admittance before trial, and that shall, by relation, operate so as to give the plaintiffs a complete title from, the time of the surrender; for the admittance is only a circumstance required by law, merely for the sake of the lord.” In4 Cruise on real property 182, it is said, the enrolment of a bargain and sale, within the time limited by statute, has relation back to the date, or time of delivery, of the bargain and sale. In same book 198, it is said, neither the death of the bargainor or bargainee before enrolment, will prevent the passing of the estate, and where the bargainee dies before enrolment, his heir shall be in ‘by descent.
In 2nd Wilson H ep. 15, Roe vs Hicks it is said, that the surrenderee may recover the mesne profits from the time of the surrender, after he is once admitted, and so may a foofee from the date of the feofment afterliv- *127 •ifcfy of seisin — and a bargainee after enrolment; the reason is, because they ate considered as one conveyance. This doctrine we adopted, in the case of Hackler’s heirs and are more fully confirmed in it by a further examinad >n of the authorities in the present caso, and if there were no other difficulties we would readily affirm the judgment. It is said in the •second place, that the patent ought not to have been admitted, because James Cole, the patentee, as appeared in evidence, was dead long anteri- or to the emanation of the patent. There are several reasons why this •objection should not prevail — 1st. Because as against the defendants, plaintiff’s right was sufficient without it, and therefore shall not bo prejudiced by its admission — 2nd. In legal contemplation, in the absence of ail laches on the part of the grantee, the patent shall have relation hack to the time of tho confirmation, the rights of the ancestors right- by congressional declaration, at which time, the ancestor was living, and the fact of his death, anterior to the actual date of the patent, shall not work a prejudice to his heirs, who succeed to his rights, and are expressly regarded in the language of the patent, but if a question at all, one between the heirs and the government, and not between them and a -stranger.
The second specific charge required of the judge, was desparaging 'the official act of governor Grandpre, in the absence of proof of his au thority, and the answer to this has already been given. The third specific charge the judge was required to make, was, that the plaintiffs,-or their ancestor, had no title under the warrant or order of survey, until confirmed by a certificate from the hoard of commissioner^. Congress, by their acts, could not impair the vested rights of an individual, much less could any subordinate authority; but without placing the decision on that ground, it is sufficient for the present purpose, to consider the board of commis•sioners, and their acts, as subsidary to the general land office, proceeding under the sanction of the president of the United States, with full power, not to obstruct or vacate the rights of any claimant, but to advance and perfect them by their consummation -in a patent. A mere stranger, without title, could not say, at least in a court of law, that a patent ob-•iained without fraud, was a nullity, nor could any one, claiming under acts of the same government, which issued the patent, be permitted to say •on behalf of > that same government, that one of its acts was entirely inva *128 lid, and another of its acts in emanating a title for the same tract of land, perfectly'conclusive, and a bar to any further investigation. One of the acts of the'government, was no more conclusive than another of its acts, between different claimants under it for the same land-, and the government in issuing the patent to Cole, preferred his claim, so far as it could do so, to the right of Moorej claiming under Ros, supported as it was by the certificate of the board of commissioners; and this is a good answer
the fourth and last objection that the court refused to give in charge, that the certificate of the commissioners offered by defendant is Conclusive evidence of title.
The only question which remains to be considered, is the one raised by plaintiffs’ counsel, and for the solution of which, one of them devoted his whole argument, considering the Pase to rest upon it. Can the heirs recover on a demise of the ancestor, which implies an ouster at a time when they had no right to possession, the ancestor being then living, not set out in the assignment of errors, but if the record is pregnant with it, and it be error, the court can look through the record, and reverse the judgment, therefore, though not expresly assigned for error.
InRunington, on Ejectment, 23, it is laid down, by the modern practice, the defendant is obliged by rule of court io confess lease, entr3', and ouster; yet that rule was only designed to expedite (he plaintiff’s right, and not to give him a right he had not before. Hence it must appear, that the plaintiff had actually the possession, and was ousted thereof by the defendant; for the ejectment is an action of trespass in its nature, and is said-to have been committed vi et armis; St must, therefore, be done lo the person himself complaining, and not to anolher who had the plaintiff’s possession, though his title may 1 e affected by the ouster, for it would be absurd to state, that the defendant vi et armis ejected the plaintiff, when it appears by his own showing, that he had not the actual possession, but it was at the time of the ouster, in another. Therefore, if a lessee for years make a lease to B. at will, and B. is ejected, A. cannot sustain this action, upon that ouster; because, though 'the possession of B. was in law the possession of A.,yel the trespass viet armis, which is complained of, must be against the actual possession,1 which was in B. 1 Roll. Rep. 3. Runington, page 24, gives the following case from the same authori *129 ty: “So if A. be lessee for years, remainder to B. for years; A. is ejected, and then his term expires; B. should not have an ejectment on the ouster of A. because the possession was not actually in him, and he cannot complain of a trespass done to another.” “So (as said in the case of Sedgewood vs. Bailey, T. Raymond, 463, if the heir bring an ejectment, and pending the suit, his ancestor dies, yet he shall not recover. A plaintiff must recover according to the right which he had, at the time of the action brought, and during the life of the ancestor, the ouster was done to him only, who alone was competent to commence the action, one man cannot be permitted to sue for an injury done to another. 1 Burrows, 119. In Runington, 209, it is also said, “In the case of Wrangham vs. Hersey, 3 Wilson 274, the lessor of the "plaintiff claimed by descent from his ancestor, who died on the 1st of January, 1771, at five-o’clock in the morning, the demise was laid in the declaration on that day, to hold from the 31st day of December preceding. After the merits had been gone into at the trial, it was objected, that the lessor of the plaintiff had no title, at the time of the demise, which appeared to be made when his ancestor was living, for he did not die until five o’clock, on the first of January, so was alive that day; but the plaintiff having clearly made out and proved his title, the judge directed the jury to find a verdict for the plaintiff, which they did accordingly. It was moved to set aside the verdict, because the. ancestor, from whom the plaintiff claimed by descent, was living on the first of January, 1771, ’till five o’clock in the morning; and there not being any fraction of a day, in fiction of law, he was alive all the day, and the title could not accrue, until the beginning of the next day, namely, on the 2d of January. But, per totam curiam, if any ancestor die at five o’clock in the morning, I enter at six and make a lease at seven o’clock, it is a good lease.”
This last case differs in nothing from the one which is now the subject of adjudication before us, but in this, that the demise is laid in the name of the heir, instead of that of the ancester; yet if, on a demise in the name of the heir, a proof that the ancestor was living at the time, and therefore the heir had not right to enter, which is a principle conceded in this case, though the facts did not in the mind of the court make out such a case, recovery cannot be had; the case would seem to be stronger where *130 the declaration itself admits the life of the ancestor in whose name the demise is laid. The principle laid down in Runington in regard to proof of actual possession, we find qualified in relation to heirs, in Buller’s nisi prius 103, where it is said, “If the plaintiff proves that A. was in possession of the premises in question, and that his lessor is heir to A. it is sufficient prima fide; for it shall be intended that A. had seizin in fee, ’till the contrary appear.”
The principles of these cases, and others having the same bearing, are to be met with in Adams on Ejectment, and other books of unquestionable authority, but need not be here adduced. These authorities are sufficient to convince us, that if there^were no interposition of the statute, but the case was to proceed upon the principles of the common law, notwithstanding the great leaning of the judges against the forms, and in favor of the substantial results of this action, it would be perhaps carrying that bias too far to overwhelm such a host of authorities. Many cases could ■be cited from the books, where, in the language of lord Mansfield “courts have gone the greatest extent in supporting ejectments,” which however need not be exhibited, since we are of opinion, that our statute of jeofails, ■in regard to this particular action, has left no discretion with us upon this subject. It is to be found in Turners Digest, page 186, sec. 142, of courts and is in the following words- “After issue joined in an ejectment, on the title only, no exception to form or substance shall be taken to the declaration in any court.” We therefore consider that plaintiffs at the time they instituted their action, had such a title on which they ought to recover in ejectment, and the only defect is in the manner of setting it out, and are protected herein by the statute just recited.
This is not analagous to the case stated by the defendants counsel, when the plaintiff in ejectment, having at one term of the court laid a demise in the declaration1 from A. and by an amended declaration, filed at a subsequent term, laid a demise from B. could not he permitted to connect the ■rights of A. and B. so as that if he failed in showing a title in A. but proved a title in B. who had not filed his count till after the statute of limitations would have interposed a bar, could not be permitted to amend, so a3 to connect the count filed by B. with the date of the count filed by A. «when the ¡statute of limitations had not yet given a title to the defendant. *131 This might not be regarded as the subject of an amendment, either to form or substance,, as the bringing of a suit by A. the vendee, might not prevent the statute of limitations from running against B. the vendor, but without deciding that question, it is clear, that the present objection is to the declaration either in form or substance, and not to the title.
Let the judgment be affirmed.-.